**SIGNED this 7 day of March, 2018.**



_____
**James P. Smith
Chief United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 13 |
| | : | |
| Tabitha Amanda Madden, | : | Case No. 15-31067-JPS |
| Debtor | : | |
| | : | |
| Tabitha Amanda Madden, | : | |
| Plaintiff | : | |
| vs. | : | Adversary Proceeding |
| | : | No. 16-03026 |
| Anderson Federal Credit Union, | : | |
| Stonebrook Recovery Services, LLC, | : | |
| Matthew Robert Cehula, and | : | |
| Lauren N. Aiken, | : | |
| Defendants | : | |

BEFORE

James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Debtor/Plaintiff:    Barry Gordon Irwin
Attorney at Law
P.O. Box 1861
Athens, GA 30603-1861

    For Defendants:    Jay Michael Barber
Litchfield Cavo LLP
1300 Parkwood Circle SE
Ste 170
Atlanta, GA 30339

    Daniel Preston Hendrix
Litchfield Cavo LLP
1300 Parkwood Circle SE
Ste 170
Atlanta, GA 30339

**MEMORANDUM OPINION**

In this adversary proceeding, Debtor seeks damages from Defendants for their alleged violation of 11 U.S.C. §§ 362 and 542(a). Defendant Anderson Federal Credit Union ("AFCU") has filed a motion for summary judgment. After considering the briefs by the parties, the evidence in the record and the law, the Court now publishes this memorandum opinion.

PROCEDURAL HISTORY

Debtor filed her original complaint against AFCU, William J. Fulbright d/b/a Stonebrook Recovery and "Jane Doe, a fictitious name representing one or more persons...". The complaint alleges that Defendants violated 11 U.S.C. §§ 362 and 542(a) when, after Debtor filed her Chapter 13 case, they failed to return her car which had been repossessed prepetition. Subsequently, Debtor amended her complaint, dismissing Fulbright and Jane Doe as Defendants, and adding Stonebrook Recovery Services, LLC, Matthew Robert Cehula and Lauren N. Aiken. Debtor caused summons and the amended complaint to be served on the new Defendants. None of the new Defendants filed a response to the amended complaint and, accordingly, Debtor obtained default judgment, as to liability, against the new Defendants. No hearing on damages has been held.

FACTS

The material facts relevant to AFCU's motion are not in dispute. On or about April 17, 2015, AFCU entered into a contract with "Stone Brook Recovery"[1] pursuant to which SBR

---

[1] In the record, this entity's name is sometimes shown as "Stonebrook". Debtor argues that there is an issue of fact with respect to the legal nature of Stone Brook Recovery. However, for purposes of AFCU's motion for summary judgment, whether Stone Brook

would repossess personal property in which AFCU had a security interest. On September 24, 2015, SBR repossessed Debtor's car, a 2008 Chrysler Pacifica. On September 30, 2015, Debtor filed her voluntary Chapter 13 petition.

Shortly thereafter, either Debtor or Debtor's attorney[2] contacted Tammy Blackwell, an employee of AFCU, to advise of the filing of the bankruptcy and demand return of the car. On October 2, 2015, Ms. Blackwell sent Debtor's attorney an email stating: "We have given the information on Mrs. Madden to our attorney. We will contact you or Mrs. Madden as soon as we hear back from them." Subsequently, on October 5, 2015, Ms. Blackwell sent an email to Debtor's attorney stating: "TABITHA MADDEN CAN CONTACT STONEBROOK RECOVERY TO MAKE ARRANGEMENTS TO PICK UP HER CAR" and provided a phone number for SBR. A few minutes later, she sent an email to SBR which stated:

> We have to release Tabitha Madden car back to her. I would not offer the keys that you have. I am not aware that she knows we have it and we may have to repo again. If she gives you a hard time about the storage fee you can just bill us for it.

Debtor called the number given and received information as to where the car was

---

Recovery was, or is, a corporation, limited liability company, partnership or trade style is immaterial. The only material fact is that AFCU entered into a contract with a third party, which the Court will hereinafter refer to as "SBR". In addition, in her brief, Debtor alleges that there was a change in ownership of Stonebrook Recovery Services from Fulbright to Cehula and Aiken. While Debtor has not pointed to where evidence of this change of ownership can be found in the record, for purposes of AFCU's motion, the ownership of Stonebrook Recovery Services is immaterial. Debtor also argues that any transfer of ownership was in violation of the terms of the contract. However, since Debtor is not a party to the contract, she has no right to enforce its provisions. Ponder v. CACV of Colo., LLC, 289 Ga. App. 858, 859, 658 S.E.2d 469, 470 (2008).

[2] Any dispute regarding whether it was Debtor or Debtor's attorney who contacted AFCU is immaterial. The undisputed material fact is that AFCU was advised of the bankruptcy and a demand for return of the car was made.

4

allegedly located. On October 6, 2015, Debtor traveled to the location in South Carolina. She was not allowed to see the car, but a woman[3] at the location demanded that she sign a release of liability as a condition to return of the car. It is unclear whether Debtor signed the release.[4] Debtor called her attorney, and on his advice, she called local law enforcement for assistance. However, they refused to intervene, claiming that it was a "civil matter". Debtor left the premises without her car.

Even though her car had not been returned, Debtor nevertheless proceeded with confirmation of her Chapter 13 plan, pursuant to which she agreed to pay AFCU its claim which was secured by the car. This Court entered an order confirming the plan on March 2, 2016. On July 25, 2016, more than nine months after her failed attempt to recover her car, she filed the complaint initiating this adversary proceeding. Approximately 11 months later, Debtor filed a motion requesting a turnover order under 11 U.S.C. § 542(a). On July 31, 2017, this Court entered an order which stated, in part:

> ORDERED AND ADJUDGED that, to the extent that Matthew R. Cehula, Stonebrook Recovery Services, LLC or any of their respective agents, employees, officers, directors, or members, are in possession of Debtor's 2008 Chrysler Pacifica, the same shall make the automobile available to Debtor instanter, without condition.

In July 2017, Debtor also filed a motion to modify her plan pursuant to which she sought to suspend the payments to AFCU until she had recovered her car. At some point thereafter, at a

---

[3] In Debtor's amended complaint, Debtor identified this woman as Lauren N. Aiken.

[4] In Debtor's amended complaint, Debtor alleges that she refused to sign the release. However, in Debtor's amended response to AFCU's first request for admissions, Debtor stated that she did sign the release, but wrote on it that she had not been allowed to see her car. For purposes of AFCU's motion, it is immaterial whether she signed the release.

hearing in the main Chapter 13 case, Debtor's attorney advised the Court that the car had been returned. The motion to modify the plan was withdrawn in November 2017.

## LEGAL DISCUSSION

As the Supreme Court has held:

> Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

Debtor contends that AFCU violated 11 U.S.C. §§ 362 and 542 by failing to return her car to her after she filed her bankruptcy petition. Debtor would bear the burden of proof at trial. Crump v. Title Max (In re Crump), 467 B.R. 532, 534 (Bankr. M.D. Ga. 2010) (debtor has the burden of proof in an action under section 542); Lord v. Carragher (In re Lord), 270 B.R. 787, 794 (Bankr. M.D. Ga. 1998) (debtor bears burden of proving she is entitled to damages for violation of automatic stay).

When read together, 11 U.S.C. §§ 542(a) and 1303 require any entity in possession, custody, or control of property of the debtor to deliver the property to the debtor upon the filing

6

of the Chapter 13 case. In this case, it is undisputed that, when Debtor filed her Chapter 13 case, AFCU did not have possession or custody of the vehicle. Rather, the car was being held by SBR. Accordingly, unless Debtor can show that AFCU continued to exercise "control" over the car after she filed her bankruptcy case, Debtor cannot establish an essential element of her claim under section 542. Similarly, since AFCU did not have possession of the car at the time of filing, in order to establish that AFCU violated the automatic stay, Debtor must show that AFCU attempted to "exercise control" over the car. 11 U.S.C. § 362(a)(3).

It is undisputed that AFCU sent an email to SBR stating, "We have to release Tabitha Madden car back to her." This directive to SBR was unequivocal. Debtor argues that the suggestion that SBR keep the extra set of car keys it held was a veiled instruction to not release the car. However, by saying "...we may have to repo again", it is clear that AFCU was expecting SBR to release the car.[5] Debtor also argues that the sentence in the email discussing payment of storage fees negated the directive to release the car. The Court disagrees. Nothing in the sentence about who would pay the fee suggested that the car be held or that its return be conditioned on Debtor paying the storage fees.

In the affidavit of Rhett Logue, AFCU's collections manager ("Logue"), Logue testified that, at no time, did AFCU play any role in SBR retaining the car. In discovery, Debtor has admitted that she has no evidence to show that AFCU requested or instructed SBR to obtain a waiver of liability before releasing the car. Therefore, there is no evidence that AFCU attempted to exercise control over the car after Debtor filed her bankruptcy case. Accordingly, there is an

---

[5] Debtor has not asserted that the failure of SBR to return the extra set of car keys is a basis for her claims under sections 362 and 542.

Document Page 8 of 10

absence of evidence of an essential fact upon which Debtor bears the burden.

Of course, a creditor can also be liable for damages caused by its agent violating the automatic stay. See, Thomason v. Chestatee Cmty. Ass'n (In re Thomason), 493 B.R. 890 (Bankr. N.D. Ga. 2013); Carpio v. Smith (In re Carpio), 213 B.R. 744 (Bankr. W.D. Mo. 1997); Haile v. N.Y. State Higher Educ. Serv. Corp., 90 B.R. 51 (W.D. N.Y. 1988). The Eleventh Circuit Court of Appeals has held:

> When applying agency principles to federal statutes, "the Restatement (Second) of Agency...is a useful beginning point for a discussion of general agency principles." Burlington Indus. v. Ellerth, 524 U.S. 742, 755, 118 S.Ct. 2257, 141 L.Ed. 2d 633 (1998).

Arriaga v. Fla. Pacific Farms, LLC, 305 F.3d 1228, 1245 (11th Cir. 2002). Accord, GDG Acquisitions, LLC v. Gov't of Belize, 849 F.3d 1299, 1308 (11th Cir. 2017) (applying Restatement (Third) of Agency.)

Restatement (Third) of Agency provides:

> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents to act.

Id. at § 101 (2006).

> An essential element of agency is the principal's right to control the agent's actions. Control is a concept that embraces a wide spectrum of meanings, but within any relationship of agency the principal initially states what the agent shall and shall not do, in specific or general terms. Additionally, a principal has the right to give interim instructions or directions to the agent once the relationship is established.

Id. at § 1.01, cmt f (1).

> The party asserting that a relationship of agency exists generally has the burden in litigation of establishing its existence.

Id. at § 102, cmt. d.  In this case, Debtor alleges, and therefore bears the burden of proving, that SBR was the agent of AFCU, and that, therefore, AFCU is liable for the acts of SBR.

The contract between AFCU and SBR is titled "INDEPENDENT CONTRACTOR AGREEMENT".  SBR is called "Independent Contractor" throughout the contract.  Paragraph 1 provides:

> [AFCU] will instruct, from time to time, Independent Contractor to repossess personal property ("Property") pledged to secure debts owed to [AFCU]. [AFCU] will provide Independent Contractor with a description of the Property and its last known location(s). Independent Contractor agrees to use its best efforts to legally repossess or attempt to repossess the Property for [AFCU] for the fee stated in the Schedule attached hereto and incorporated herein by reference; provided the Property is repossessed in accordance with the provisions contained herein and delivered to [AFCU] or stored for [AFCU] at such location and at such expenses as is agreed upon by [AFCU].  If Independent Contractor is authorized to store the collateral for [AFCU], [AFCU] agrees to pay the Independent Contractor a storage fee as stated in the Schedule.

Further, Paragraph 3.D provides, "[SBR] shall act as an Independent Contract and not as an employee or agent of [AFCU].

Other than requiring SBR to act in accordance with the law (see paragraphs 3.E.,7), AFCU had no right to control the manner or time by which SBR repossessed property.  Further, Logue's affidavit affirmatively establishes that AFCU did not instruct SBR with respect to the manner of repossessing or retaining Debtor's car.  Debtor has introduced no evidence to contradict these facts.

Debtor also argues that AFCU is liable for the acts of SBR under the doctrine of apparent

authority. Restatement (Third) of Agency provides:

> Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations.

Id. at § 2.03. "A person manifests assent or intention through written or spoken words or other conduct. Id. at § 1.03.

> Apparent authority is present only when a third party's belief is traceable to manifestations of the principal. The fact that one party performs a service that facilitates the other's business does not constitute such a manifestation.

Id. at § 3.03, cmt. b.

Debtor has pointed to no evidence in the record to establish that AFCU manifested its assent through a writing, spoken word or other conduct, that SBR, on AFCU's behalf, had the right to hold Debtor's car after the filing of the bankruptcy or to place any conditions on the return of the car. Accordingly, Debtor cannot establish the facts necessary to prove apparent authority.

In summary, there is a total lack of evidence to establish that AFCU was in possession, custody or control of Debtor's car. Further, there is a total lack of evidence to establish that SBR was the agent of AFCU. Accordingly, AFCU is not liable for the acts of SBR. Because there are no material facts in dispute, AFCU is entitled to summary judgment. An order consistence with this memorandum opinion will be entered.

*END OF DOCUMENT*